ALEXANDER RICHARDS, plaintiff in error, vs. THE BIBB COUN-
TY LOAN ASSOCIATION, defendant in error.

[1.] The method for the foreclosure of mortgages, given by the judiciary Act of 1799, is not confined to mortgages made to secure *liquidated* demands.

[2.] When a mortgage is foreclosed by "The Bibb County Loan Association," the sum for which the judgment is to be entered, is such a sum as will, by the constitution of the association, be sufficient to redeem the property on the day of the judgment, at the rate of premium at which, the funds of the association are then selling.

Foreclosure of mortgage, from Bibb.    Decision by Judge POWERS, November Term, 1857.

This cause coming on for a new trial, after the decision of the Supreme Court reversing the former judgment of the Court below, (see 21 *Ga. Rep.,p.* 592,) defendant Richards, in addition to the cause previously shown and pleas filed, further insisted that said *rule nisi* was insufficient in law to require any answer, and that plaintiff was not entitled to any judgment absolute thereon.    The Court overruled the showing as insufficient, and defendant excepted.

Defendant further pleaded, that by the terms of the contract, nothing was due from him to plaintiff, whereby the mortgage could be foreclosed under and by virtue of the statutes of said State, and in support of this plea relied upon the 7th section of the 8th article, and the 3d section of the 9th article of the constitution of said association.    The Court overruled and disallowed the plea, and defendant excepted.

Defendant further pleaded, that plaintiff could only have judgment absolute for the original sum loaned, and secured by the mortgage, to-wit: the sum of $975 00, and that he had paid thereon $170 00, in monthly installments, and was entitled to a credit therefor. Plaintiff, thereupon, entered a credit upon the mortgage for said sum. Whereupon, the Court overruled the plea, and held the same insufficient to prevent judgment absolute being rendered. To which ruling defendant excepted.

Defendant insisted and moved that the issues presented by his said pleas, as also the issues presented by pleas marked Nos. 1, 2, and 3, theretofore filed in said cause and verified, should be submitted to, and tried by a jury, or referred to an arbitrator, in terms of the statute in that regard. The Court overruled the motion, and defendant excepted.

Plaintiff then read the bond and mortgage, and the assignments of stock by defendant to plaintiff; and further read extracts from the books of the association, showing the balance due by defendant on said mortgage to be $1,353 40, and closed.

Defendant again insisted that plaintiff had not made out such a case, under the provisions of said constitution, as entitled him to a judgment, and claimed that the same should be referred to a jury or an arbitrator, to ascertain the amount of said indebtedness, if any. All of which the Court overruled and disallowed, and defendant excepted.

And, therefore, the Court gave judgment for the plaintiff, for the sum of $1,353 40. And to which judgment defendant excepted.

E. A. & J. A. NISBET, for plaintiff in error.

LANIER & ANDERSON; and BAILEY, contra.

*By the Court.*—Benning, J. delivering the opinion.

The three pleas all, are nomore than demurrers. They all rely upon facts apparent on the face of the *rule nisi.* Their decision, then, was for the *Court*, and not for the jury.

The reasons urged in support of the first two, were these: 1st, that the demand was an *unliquidated* one, and that the statute of 1799, providing for the foreclosure of mortgages, does not extend to the case of a mortgage to secure an unliquidated demand; 2dly, that the demand was such, that the judgment of foreclosure, would have to be one that would have to depend for its amount, on something to be ascertained after its rendition; viz: "the rate of premium" at which, the money of the association would be selling, at the time of the sale of the mortgaged property, made under the foreclosure judgment.

Neither of these reasons seems to us good. As to the first of them.

[1.] There is, in the Act of 1799, nothing that confines the mode of foreclosure, given by the Act, to cases of liquidated demands. The words are general;—"The method of foreclosing mortgages on real estate," &c.

There is nothing in considerations of convenience and expediency.

As to the second of the reasons. The association, by its constitution, is authorized to retain out of the proceeds of property sold by it, under mortgage, such a sum "as would be required to redeem the property." The association must, therefore, be entitled to have such a judgment as will authorize it to retain this sum. *Art. 8, sec.* 7

What is this sum?

"Should any stockholder desire to have his or her property discharged from mortgage before the association shall have regularly terminated, he or she shall be allowed so to do, by paying into the hands of the treasurer such a sum of money

as shall, at the rate of premium the funds are then selling at, produce the same monthly payment of interest as that which said stockholder had been previously paying on his or her advance; provided such sum shall in no case be less than the net amount actually received by him or her." *Art. 9, sec. 3.*

This sum, then, is " such a sum as shall at the rate of premium the funds are then" (the time of the redemption) " selling" at, " produce the same monthly payment of interest," &c.

Can it be ascertained beforehand—at the time of the judgment of foreclosure—what " such a sum" will be ?

Sufficiently, we think, for all practical purposes.   The sale of the mortgaged property, ought to take place in two or three months after the judgment of foreclosure.   The price of money does not, in general, fluctuate appreciably, in the course of two or three months.   It may be assumed, there-fore, *that* a sum which would be sufficient to redeem the prop-erty at the date of the judgment of foreclosure, will be the sum that will be sufficient to redeem it when the day of sale arrives.

The sum that will be sufficient to redeem the property at the time of the judgment, may be ascertained at that time. The premium at which the money of the association would then sell, if offered for sale by the rules of the association, will be the test.   And it may be assumed, that this premium will be the same that it was, at the last preceding monthly meet-ing.   In the present case, this meeting happened on the same week on which the judgment of foreclosure was rendered, and just before its rendition.   What the premium was at the last monthly meeting, may be easily ascertained by proof.

This premium found, the sum that would be sufficient to redeem the property at the date of the judgment, may be as-certained. This sum, when ascertained, may be taken as the sum that will also be sufficient to redeem the property, when the day of its sale under the mortgage, shall have come; and therefore, as the sum, which the association will, on that day, be entitled " to retain."

Thus then it *can* be ascertained at the time of the judgment of foreclosure, what will be "such a sum" as the association will be entitled to retain at the subsequent time of the mortgage sale.

When "such a sum" has been ascertained, that is the sum for which the judgment is to be entered.

But should it turn out, that, from extraordinary causes, money shall materially rise, or materially fall, in the short time intervening between the day of foreclosure, and the day of sale, the party affected by the change, would not, I think, be without remedy. Every judgment yields *to* matter *ex post facto*, and why not this? The facts when presented to the Court in the proper way, would I think, be received, and allowed their full efficacy in modifying the judgment.

[2.] We think, then, that the second reason assigned in support of the first two pleas, was not well founded. We think, that the sum for which the mortgage was to be foreclosed, was such a sum as would, by the constitution of the association, be sufficient to redeem the property on the day of the judgment of foreclosure, " at the rate of premium" at which the funds were then selling.

What has just been said of the first two pleas, is sufficient to show, that the third plea was also insufficient. Whether the sum for which, "judgment absolute" was to be entered, was to be " the original sum loaned" only, or some larger sum, would depend on the rate of premium at which the money of the association might be selling at the time of the entering of the judgment.

The pleas presented no issue of *fact*. They did not so much as say, *nil debet*. They presented, then, nothing for a jury to try.

The evidence submitted by the association, consisted of the bond and mortgage and assignment of stock; and also of the books of the association, on which books was this entry: "Statement of the balance due by Alexander Richards," on mortgage to Bibb County Loan Association, November 27,

1857:" (the date of the judgment was 1st December, 1857.)

| | | | |
|---|---|---|---|
| No. 2. Mortgage 20 June, 1854 - - - | | | $2,000 00 |
| 25 months interest unpaid to 19 Nov. | - 250 | 00 | |
| 3 fines - - - - - - | 12 | 00 | |
| Cash paid insurance - - - | 42 | 00——304 00 | |
| | | $2,304 00 | |

*Credit.*

| | | | |
|---|---|---|---|
| By 10 shares of stock 17 mo. pd. - | 170 | 00 | |
| Less expense - - - - | 19 | 40 | |
| | 150 | 60 | |
| Premium at 40 per cent - - - | 800 | 00——950 60 | |
| | | $1,353 40 | |

The counsel for Richards insisted, that this evidence did not make out such a case as entitled the association to a verdict. We think that it did. It showed what was the rate of premium five days or fewer, before the time of the trial. It may be assumed, that the rate remained the same to the day of the trial.

The Court gave judgment for the $1,353 40, and that judgment is excepted to. But as far as we can see, it seems to be supported by the evidence.

Judgment affirmed.